UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA,                           09 Cr. 339

           -v.-
                                                    OPINION
ANTONIO GUERRERO, et al.,

           Defendants
------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/20/10
```

A P P E A R A N C E S:

          Attorneys for Government

          PREET BHARARA
          United States Attorney for the
               Southern District of New York
          86 Chambers Street, 3rd Floor
          New York, NY  10007
          By:  Laurie Korenbaum, Esq.
               Marissa Molé, Esq.
               Aimee Hector, Esq.


          Attorneys for Defendants

          KELLEY DRYE & WARREN, LLP
          101 Park Avenue
          New York, NY  10178
          By:  Don Buchwald, Esq.

          FREDERICK H. COHN, ESQ.
          61 Broadway, Suite 1601
          New York, NY 10006

          DAVID S GREENFIELD, ESQ.
          100 Lafayette Street, Suite 502
          New York, NY 10013

**Sweet, D.J.**

The Government has moved for an _in limine_ ruling that the eye witness testimony of Ruben Negron ("Negron") in the state murder trial of Leonardo Flores, a/k/a "Roberto Mercado" be excluded.  It has also moved _in limine_ to admit certain evidence of uncharged crimes committed by Defendants Guerrero and Flores, enumerated in a letter to all counsel dated April 6, 2010.  For the reasons set forth below, the motion to exclude Negron's testimony is denied. Its motion to admit evidence of uncharged crimes is granted in part and denied in part.

## I.   FACTUAL BACKGROUND & PRIOR PROCEEDINGS

It is assumed that the parties are familiar with the relevant factual background and prior proceedings in this action in which three defendants are charged with four murders in 1994 in connection with a drug conspiracy.

## II.  DISCUSSION

### a. Negron's Testimony Is Admissible

1

Maldonado has indicated that he intends to offer Negron's testimony from Flores's trial. The Government has requested an in limine ruling precluding Negron's testimony as inadmissible hearsay.

At Leonardo Flores's trial, Negron, now deceased, identified Leonardo Flores and testified that he witnessed Leonardo Flores shoot Overman. At that trial, Negron claimed to have seen the shooter's face at two distinct moments, although he had told police in his initial interview that he had seen Leonardo Flores's face a second time. During the first instance, Negron was standing approximately 170 feet from the shooter. See Gov't Opp'n Ex. D., Testimony of Ruben Negron on May 9, 1996 at 621: 4-6. His vantage point was also obstructed by a gas station that stood between Negron and the shooter. Id. at 604:11-15, 613:25-614:3. The second time he claimed to have seen the shooter's face was from approximately 130 feet away as the shooter ran down the street away from the shooter and turned to look back in Negron's direction. Id. at 621:7-13, 622:24-623:1. He also testified at trial that he knew and recognized Leonardo Flores from having seen and interacted with him around the neighborhood, id. at 584:11-

2

13, although he did not offer this information at previous
interviews by the police or in as much detail before the
grand jury. See Gov't Opp'n Exs. A, B, C at 5:13-14.

### i. Negron's State Trial Testimony is Inadmissible Under Federal Rule of Evidence 804(b)(1)

Federal Rule of Evidence 804(b)(1) provides that,
where a declarant is unavailable as a witness, the
declarant's "[t]estimony given as a witness . . . at . . .
a different proceeding [shall not be excluded as hearsay]
if the party against whom the testimony is now offered . .
. had an opportunity and similar motive to develop the
testimony by direct, cross, or redirect examination." Fed.
R. Evid. 804(b)(1). Given the parameters of the rule,
former testimony will not be excluded if the following
requirements are met: (1) the declarant is now unavailable;
(2) the prior testimony was given at a formal legal
proceeding; (3) the party against whom the testimony is
offered is the same party as in the prior proceeding; and
(4) that party had an opportunity and similar motive to
develop it at the prior proceeding.

Negron's testimony does not fulfill the third
requirement of Rule 804(b)(1) because the federal
government was not a party to the prior proceeding.


In United States v. Peterson, the Second Circuit
considered the admissibility of testimony taken during a
state prosecution at a subsequent federal criminal trial
under Rule 804(b)(1).  100 F.3d 7, 12 (2d Cir. 1996).  The
Court specifically held that the prior state testimony was
inadmissible because "the United States, against which [the
defendant] sought to offer his prior testimony, was not a
party to the proceedings before the state grand jury."  Id.
at 12.  According to the Second Circuit, the "dual
sovereignty principle" compelled the conclusion that the
federal and state governments are not the same "party" for
purposes of Rule 804.[1]  Id. ("It has been well established
in various contexts that the federal government and a state
government are separate sovereigns.").


Peterson has been applied in circumstances
strikingly similar to the instant case.  In United States

---

[1] The Peterson Court noted that "the dual sovereignty concept may yield,
however, if one sovereign effectively controlled the other" in the
particular prosecution.  Id. at 12.  As the federal government was not
involved in the prior state prosecution, this exception does not apply
here.

v. Amato, the defendant sought to admit exculpatory testimony in a federal murder trial by two deceased alibi witnesses who had previously testified in a state trial regarding the same murder allegation.  No. 03-CR-1382, 2006 Dist. LEXIS 42928, *7-12 (E.D.N.Y. June 26, 2006) (Garaufis, J.).  The district court excluded the testimony, finding that testimony offered at the state trial was not admissible under Rule 804 because the federal government was not a party to the state proceeding and that the state and federal governments did not have the same motive and opportunity to cross examine the witnesses.  Id. at *7.

Accordingly, as the federal Government was not a party to the proceedings of State of New York v. Roberto Mercado, the testimony of Negron is inadmissible hearsay.

### ii.   Negron's State Trial Testimony is Admissible Under Federal Rule of Evidence 807

Evidence that would otherwise be hearsay, and is not subject to the exceptions to the hearsay under Rules 803 or 804, Fed. R. Evid., "but having equivalent circumstantial guarantees of trustworthiness," will not be excluded

if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807.

When he testified in May 1996, Negron was 30 years old (T.503).[1] He lived in the Bronx (T.502), had been married for four years and had a three-year-old daughter (T.503-4). He attended school through 11th grade (T.504) and he had never been convicted of a crime (T.506).

Negron had two jobs: a full-time 6-day-a-week, 11-hour-a-day job selling automotive parts, which he had been working at for 18 months (T.504-5), and a second part-time job working at a parking garage he had owned for four years on 1776 Boston Road in the Bronx, where he worked a few hours every night and on Sundays from early in the morning to well into the evening (T.504-5). Negron had a license from the New York City Department of Consumer

---

[1]    "T." references are to Negron's trial transcript which appears as Exhibit D to the Government's Memorandum of Law.

6

Affairs for the parking lot (T.561). Negron had no involvement with drugs or Solid Gold, the drug conspiracy charged in the indictment, and no motive to lie has been cited.

In its Memorandum of Law, the Government questions both Negron's vision and his credibility, retracing arguments first asserted by Mercado's defense attorney during Negron's cross-examination at the May 1996 Bronx County trial. All of Negron's trial testimony is available for presentation to the jury in this action. The contentions of the Government contained in its Memorandum of Law can be repeated to the jury here.

The Government has challenged Negron's testimony (T. 506) concerning the excellence of his eyesight (Gov't Memo, page 15, fn. 8). Mercado's defense team had a private investigator who, well before the trial, had come face to face with Negron (T. 668). Negron had also testified in the Grand Jury on October 13, 2004 (Exhibit C to Gov't Memo of Law), had met with Bronx prosecutors a few weeks before trial (T. 674), two different days the week before trial (T. 672) and one day earlier in the week of his testimony (T. 672). The prosecutors would have been under a Brady

obligation to disclose if Negron wore glasses or had any observable problem with his vision.

The lighting and weather conditions were clear throughout (T. 515-16, 524). This was confirmed by the police officers who arrived moments later at the scene. Negron's vision was unobstructed except for "half a second" when Mercado passed behind a gas pump as he ran towards Overman to shoot him in the head (T. 670-672).

Negron called 911 after seeing Overman shot (T. 511, 522-23). Negron told the 911 operator that two people had been shot and gave the location of the homicides (T. 523). The 911 operator informed him that they would immediately send a patrol car. (T. 523). After running to the victims, Negron stood at the scene waiting for the police to arrive (T. 526). He was present when they arrived (T.527), 10 to 15 minutes after he had called 911, and he told them he was the 911 caller (T. 529, 576). The police drove him around for 20 to 30 minutes looking for the shooter (T. 530, 640). He looked through a mugbook at the precinct but it did not contain a picture of Mercado (T. 590). Contemporaneous police reports establish that at the

8

precinct on October 9th, Negron "informed the undersigned
[Detective Scott] that he can identify the male that shot
the two males." Negron was frightened on the day of the
shooting. A day later he decided to tell police that he
recognized the shooter from prior encounters (T. 591).

Three days later, on October 12, 1994, Negron
selected Mercado's photo (photo #3) from a photospread
containing six photos of dark-complexioned Hispanics (T.
628, 652, 657-58). At no point did anybody tell or suggest
to Negron to select person number three, nor did anyone
tell Negron anything about the individuals participating in
the lineup (T. 654).

Later on October 12th, Negron viewed a physical
lineup at the precinct (T. 533-34), where he recognized
Mercado "right away" (T. 534, 538), but took about one
minute to identify him because he was scared ((T. 628,
632). All of the lineup participants were Hispanic black
(T. 537). He identified Negron as the shooter (T. 534,
538). Only two detectives were with Negron in the room in
which he viewed the lineup. (T. 538). Neither these
detectives, nor any other police officer, ever suggested to

9

Negron that he select any particular person or number (T. 538).

The following day, October 13th, Negron again identified Mercado in the Bronx grand jury as the shooter. In the grand jury, Negron also testified that he had seen the gunman "four months ago at my parking garage we had a little argument parking his car."

Negron's May 1996 testimony meets the five criteria for admissibility under Rule 807. The existence of a catch-all hearsay exception indicates that Congress did not want courts to admit hearsay only if it fits within one of the enumerated exceptions. The reference to guarantees of trustworthiness equivalent to those in the enumerated exceptions suggests that almost fitting within one of these exceptions cuts in favor of admission, not against. United States v. Valdez-Soto, 31 F.3d 1467, 1471 (9th Cir. 1994) (holding prior inconsistent sworn statement of witness admissible under residual hearsay rule predecessor - 803(24) - where most, but not all criteria of the specific rule were present and the statement enjoyed requisite indicia of trustworthiness). See also United States v. Popenas, 780 F.2d 545, 546-47 (6th Cir. 1985) (reversing

district court for not allowing admissibility of out-of-court statements to be argued under Rule 803(24) after finding Rule 801(d)(1)(A) inapplicable); United States v. Tafollo-Cardenas, 897 F.2d 976, 980 (9th Cir. 1990) (after finding that Rule 801(d)(1)(A) did not apply to out-of-court statements, court noted the possible use of Rule 803(24) as a basis for their admission).[2]  The "interests of justice" language calls to mind the Supreme Court's decision in Chambers v. Mississippi, 410 U.S. 284 (1973), holding that fundamental due process required admission at defendant's trial of another person's out of court oral unsworn confessions of having committed the murder the defendant was accused of despite Mississippi's state rules of evidence.  Id. at 294-303.

Negron's statements were given under oath subject to penalty of perjury in a formal judicial setting, and Negron is unavailable. Mercado's skilled and experienced defense counsel had at least as strong a motive to undercut the accuracy and/or truthfulness of Negron's testimony as the Government would have here. Under the particulars of this case, whether Negron was previously testifying in a

---

[2]     See also United States v. Laster, 258 F.3d 525, 530 (6th Cir. 2001), cert. denied, 534 U.S. 1151 (2002); United States v. Banks, 514 F.3d 769, 777-78 (8th Cir. 2008).

state court or a federal court has nothing to do with an
analysis of the "indicia of truthfulness" of his 1996
testimony.

In United States v. Dinapoli, 8 F.3d 909 (2d Cir.
1993) cited by the Government, the Second Circuit, en banc,
held that allegedly exculpatory grand jury testimony of an
unavailable witness offered by the defense at a criminal
trial had to be examined on a ease-by-case basis in order
to determine whether prosecutors had a similar motivation
in the grand jury to impeach the testimony as they would
have had at trial. The Court held such an inquiry to be
"fact specific" and not controlled either "by the
availability at the grand jury of some cross-examination
opportunities that were foregone" or "simply because
questioning available at a prior proceeding was not
undertaken." Id. at 914, 914 n.5. The Dinapoli Court,
noting that the grand jurors had already indicated that
they did not believe the particular testimony at issue,
concluded that similar motivation to impeach did not exist
in the grand jury. Id. at 915. In United States v.
Peterson, 100 F.3d 7 (2d Cir. 1996) also cited by the
Government, the defendant sought to introduce his own self-
exculpatory state court grand jury testimony at his federal

trial. Reiterating the fact specific analysis required by
Dinapoli, the Court held that given other admissions made
by the defendant in the state grand jury, the motivation to
impeach "was far less intense than it would have been in
probing such testimony at trial." Id. at 13. Moreover, the
Peterson court concluded that by resting on his Fifth
Amendment right not to testify at the federal trial, the
defendant was not truly "unavailable" within the meaning of
the Rule. Id. In United States v. Amato, 306 Fed. Appx. 630
(2d Cir. 2009), the Second Circuit affirmed Judge
Garaufis's exclusion in a federal racketeering trial of
deceased witnesses' prior state court testimony where
impeachment on the witnesses' Bonanno family connections
(highly relevant in the federal racketeering case) had not
been allowed in the state court and where the proffered
evidence was of only marginal value. Id. at 632.

In United States v. Morgan, 385 F.3d 196 (2d Cir.
2004), the Second Circuit affirmed admission under Rule 807
of co-defendant Hester's letter against defendant Morgan
where the letter bore the requisite indications of
trustworthiness (having been written by Hester to her
boyfriend with no expectation that it would ever be found
by the police). Id. at 209.

13

Negron testified under oath in open court and was cross-examined by capable, experienced counsel who was fully motivated to impeach every aspect of his testimony and who, in fact, pursued the avenues of cross-examination now suggested by the Government.

For the foregoing reasons, Negron's prior testimony will be admitted under Rule 807 and as a matter of fundamental due process.

### b. The Motion to Admit is Denied in Part and Granted in Part

#### i. Guerrero's Slashing the Face of a Male Who Had Lied to Him Is Inadmissible

In the early to mid 1990s, Guerrero and a CW went to a crackhouse in the Bronx, New York, in order to find a member of Solid Gold whom they believed to be inside the crackhouse smoking crack cocaine.  While at the crackhouse, Guerrero had an altercation with a male, who falsely told Guerrero that the Solid Gold member was not inside.  When Guerrero and CW confirmed that in fact the Solid Gold member was hiding in a closet, Guerrero slashed the male who had lied to them in the face with a knife.

14

The Government submits this incident is evidence
of the ongoing relationships between the cooperating
witnesses and Defendants during the relevant times.

The incident appears to be unrelated to the
conspiracy and Guerrero's participation in it.  Its
probative value is outweighed by its prejudice.  It is
inadmissible.

### ii.  Guerrero's Possession of Cocaine for Sale After Release from Jail in 1998 Is Inadmissible

Sometime after Guerrero was released from jail in
April 1998, a CW provided Guerrero with amounts of powder
cocaine for approximately six to eight months.  The cocaine
was provided to Guerrero so that he could sell it.  The
Government submits that this evidence demonstrates a
relationship of trust between Guerrero and the CW.

The incident is not evidence of the conspiracy
and its prejudice outweighs its probative value.  If the
relationship of the CW and Guerrero in 1998 becomes
relevant, this ruling can be revisited.

15

### iii.  **Kidnapping in Approximately 1998, To Be Offered Against Flores and Guerrero, Is Inadmissible**

In approximately 1998, Flores, a CW, and others kidnapped a Dominican male who owed money to a drug dealer. Before the kidnapping, the CW asked Guerrero to borrow a gun.  Guerrero sent the CW to his brother-in-law who provided the CW with a gun.  The Dominican was held at the apartment in Manhattan for a period of days.

This incident occurred approximately four years after the charged crimes and does not demonstrate Guerrero and Flores's relationships with the CW during a "relevant time," nor is it "direct proof of the narcotics conspiracy that constitutes and element of the murders charged."  It is not admissible.  If the relationship between the CW and Flores in 1998 becomes relevant, this ruling can be revisited as to its admissibility against Flores.

### iv.  **Intimidation of Rival Drug Gang, To Be Offered Against Flores, Is Admissible**

Sometime before the murder of Livino Ortega ("Ortega"), Flores and a CW went to Ortega's drug spot,

16

which was adjacent to the Solid Gold drug spot at 173rd
Street and Boston Road, in order to frighten Ortega.  Both
Flores and the CW fired guns while there.

The Government submits that this incident helps
to prove the ongoing relationships between the cooperating
witness and Flores and is direct proof of the narcotics
conspiracy that constitutes and element of the charged
murders.  Because the incident provides background and
context for Ortega's eventual murder, and is suggestive of
intent, it is admissible.

### v. Flores's Sale of Drugs to CW While That CW Was in Prison, To Be Offered Against Flores, Is Inadmissible

Flores provided drugs to a CW while that CW was
serving time in prison.

The Government submits this incident to
demonstrate the relationship of trust between Flores and
the CW.

This evidence does not appear to relate to the
conspiracy and is inadmissible. If the relationship of CW

and Flores while the CW was in prison becomes relevant,

this ruling can be revisited.

### III. CONCLUSION

For the foregoing reasons, the Government's

motion to exclude Negron's testimony is denied and its

motion to admit evidence of uncharged crimes is denied in

part and granted in part.

It is so ordered.

**New York, NY**
**April 20, 2010**

ROBERT W. SWEET
U.S.D.J.